March 6, 2007

The Honorable Jane Nelson
Chair, Committee on Health and Human Services
Texas State Senate
Post Office Box 12068
Austin, Texas 78711-2068

Opinion No. GA-0526

Re: Whether a municipality may prohibit registered sex offenders from living in certain locations within the municipality (RQ-0526-GA)

Dear Senator Nelson:

You state that municipalities "across the state either have passed or are considering passing municipal ordinances that prohibit registered sex offenders from living within a specified distance from locations where children typically congregate, including day-care facilities, schools, public swimming pools, and parks and playgrounds."[1] You ask whether a municipality may adopt such ordinances. *See* Request Letter, *supra* note 1, at 1. You particularly ask us to address two issues:

> (1) whether Chapter 508, Government Code, Article 42.12, Code of Criminal Procedure, or Chapter 62, Code of Criminal Procedure, preempts or otherwise limits a municipality's authority in this regard and (2) whether Section 3 or 19, Article I, Texas Constitution, or any other provision of the Texas Constitution limits a municipality's authority in this regard.

*Id.* at 2.

We note preliminarily that no particular adopted or proposed ordinance is at issue. Thus, our answer is general and does not speak to the preemption or constitutionality of a specific ordinance.

In addition, we note that you do not specify whether your question concerns general-law or home-rule municipalities. *See id.* at 1–2. A general-law municipality is a political subdivision "created by the State and, as such, possess[es] those powers and privileges that the State expressly confers upon [it]." *Tex. Dep't of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 645 (Tex. 2004). We have found no law authorizing a general-law municipality to adopt this type of residence

---

[1] Letter from Honorable Jane Nelson, Chair, Committee on Health and Human Services, Texas State Senate, to Honorable Greg Abbott, Attorney General of Texas, at 1 (Aug. 29, 2006) (on file with the Opinion Committee, *also available at* http://www.oag.state.tx.us) [hereinafter Request Letter].

restriction. Thus, unless the Legislature expressly authorizes it, a general-law municipality may not adopt an ordinance restricting where a registered sex offender may live.

On the other hand, a home-rule municipality "do[es] not depend on the legislature for specific grants of authority but, instead, ha[s] a constitutional right of self-government and look[s] to the legislature only for specific limitations on [its] power." *City of Laredo v. Webb County*, No. 03-05-00168-CV, 2005 WL 3234768, at *3 (Tex. App.—Austin Dec. 1, 2005, no pet.); *see* TEX. CONST. art. XI, § 5; *Quick v. City of Austin*, 7 S.W.3d 109, 122 (Tex. 1998); *Dallas Merchant's & Concessionaire's Ass'n v. City of Dallas*, 852 S.W.2d 489, 490–91 (Tex. 1993). We thus consider whether the Legislature has specifically limited a home-rule municipality's authority to adopt ordinances like those you generally describe.

## I.     Whether Residence Restrictions Adopted by Home-Rule Municipalities are Preempted by Government Code Chapter 508, Code of Criminal Procedure Article 42.12, or Code of Criminal Procedure Chapter 62

Despite its broad authority, a home-rule municipality may not adopt an ordinance that is "inconsistent with the Constitution of the State, or [with] the general laws enacted by the Legislature of this State." *Dallas Merchant's & Concessionaire's Ass'n*, 852 S.W.2d at 490 (quoting TEX. CONST. art. XI, § 5); *see City of Corpus Christi v. Five Citizens of Corpus Christi*, 103 S.W.3d 660, 663 (Tex. App.—Corpus Christi 2003, pet. denied). Consequently, a municipal ordinance "that attempts to regulate a subject matter preempted by a state statute is unenforceable to the extent it conflicts with the state statute." *Dallas Merchant's & Concessionaire's Ass'n*, 852 S.W.2d at 491. Nevertheless, "the mere fact that the legislature has enacted a law addressing a subject does not mean [that the] subject matter is completely preempted." *Id.* (quoting *City of Richardson v. Responsible Dog Owners*, 794 S.W.2d 17, 19 (Tex. 1990)). A court will not hold a general law and a municipal ordinance "repugnant to each other if any other reasonable construction leaving both in effect can be reached." *Id.* (quoting *City of Beaumont v. Fall*, 291 S.W. 202, 206 (Tex. 1927)). And if the Legislature chooses to preempt a subject matter usually encompassed within a home-rule municipality's broad powers, "it must do so with unmistakable clarity." *Id.*

You suggest that Government Code section 508.187, Code of Criminal Procedure article 42.12, or Code of Criminal Procedure chapter 62 may preempt the home-rule municipalities' ordinances. *See* Request Letter, *supra* note 1, at 2. We will discuss chapter 62 of the Code of Criminal Procedure first.

Chapter 62 establishes a sex-offender-registration program under which persons with a "reportable conviction or adjudication" or who are "required to register as a condition of parole, release to mandatory supervision, or community supervision" must register "with the local law enforcement authority in any municipality where the person resides or intends to reside for more than seven days." TEX. CODE CRIM. PROC. ANN. art. 62.051(a) (Vernon Supp. 2006); *see also id.* art. 62.001(1) (defining "Department"); *id.* art. 62.004 (requiring the Department of Public Safety to determine "which local law enforcement authority serves as [a] person's primary registration authority"). The phrase "reportable conviction or adjudication" is defined to include various sex offenses, such as indecency with a child, possessing or promoting child pornography, burglary with

intent to commit a sex offense, and aggravated kidnapping with intent to sexually abuse a person younger than 17 years old. *Id.* art. 62.001(5). *Compare* Act of May 26, 2005, 79th Leg., R.S., ch. 1008, § 1.01, 2005 Tex. Gen. Laws 3385, 3386–87 (defining "reportable conviction or adjudication"), *with* Act of May 25, 2005, 79th Leg., R.S., ch. 1273, § 2, 2005 Tex. Gen. Laws 4049, 4050–51 (same). Depending on the precise sex offense the person committed, a person's duty to register as a sex offender expires when the person dies or on the tenth anniversary of the date on which (1) the person was released from a penal institution or discharged from community supervision, or (2) the court dismissed the criminal proceedings against the person. TEX. CODE CRIM. PROC. ANN. art. 62.101 (Vernon Supp. 2006). Failing to register as required is a criminal offense. *See id.* art. 62.102.

The statutory duty to register as a sex offender does not conflict with a municipal ordinance limiting the area in which a sex offender must live. Accordingly, chapter 62 does not preempt the municipal ordinances.

Article 42.12, section 13B of the Code of Criminal Procedure and section 508.187 of the Government Code (the "child-safety-zone statutes") both provide in similar terms for the establishment of a child-safety zone that certain sex offenders may not enter. Code of Criminal Procedure article 42.12, section 13B pertains to defendants placed on community supervision, while Government Code section 508.187 pertains to convicted defendants who have served a sentence for a sex offense and are placed on parole. *See id.* art. 42.12, § 13B(a); TEX. GOV'T CODE ANN. § 508.187(a)–(b) (Vernon 2004). Under both statutes, a defendant or convicted defendant who, as a condition of community supervision or parole, must adhere to child-safety-zone provisions may not:

> (A)   supervise or participate in any program that includes as participants or recipients persons who are 17 years of age or younger and that regularly provides athletic, civic, or cultural activities; or

> (B)   go in, on, or within [1,000 feet, under article 42.12, section 13B or a distance specified by the panel under Government Code section 508.187(b)(1)(B)] of premises where children commonly gather, including a school, day-care facility, playground, public or private youth center, public swimming pool, or video arcade facility.

TEX. GOV'T CODE ANN. § 508.187(b)(1) (Vernon 2004); *cf.* TEX. CODE CRIM. PROC. ANN. art. 42.12, § 13B(a)(1) (Vernon Supp. 2006). Subsection (B) of the child-safety-zone statutes is particularly relevant to our preemption inquiry.

The child-safety-zone statutes are not inconsistent with home-rule municipality residence restrictions as you have described them. *See Dallas Merchant's & Concessionaire's Ass'n*, 852 S.W.2d at 490 (quoting TEX. CONST. art. XI, § 5). A sex offender may comply with both the child-safety-zone statutes and a home-rule municipality's residence restrictions by staying out of the areas described in both. In this way, the state statutes and the municipal ordinances are not repugnant; instead, they are complementary. *See id.* at 491 (quoting *City of Beaumont*, 291 S.W. at 206).

Moreover, nothing in either of the child-safety-zone statutes evidences an unmistakably clear legislative intent to preempt a home-rule municipality's authority to regulate where sex offenders may live. *See id.* at 491. Certainly, neither child-safety-zone statute expressly preempts municipal regulation. *Cf.* TEX. ALCO. BEV. CODE ANN. § 109.57(a)–(b) (Vernon Supp. 2006) (expressly restricting a home-rule municipality's authority to impose stricter standards on premises or businesses required to have a license or permit under the Alcoholic Beverage Code and setting out the Legislature's intent that the Alcoholic Beverage Code "shall exclusively govern the regulation of alcoholic beverages in this state"); *Dallas Merchant's & Concessionaire's Ass'n*, 852 S.W.2d at 491–92 (stating that the Alcoholic Beverage Code "clearly preempts an ordinance of a home-rule city that regulates where alcoholic beverages are sold"). In addition, nothing in the child-safety-zone statutes' legislative history suggests an intent to preempt municipal regulation. *See generally* SENATE COMM. ON CRIM. JUSTICE, BILL ANALYSIS 1, Tex. C.S.S.B. 111, 74th Leg., R.S. (1995); HOUSE COMM. ON CRIM. JURISPRUDENCE 1, Tex. C.S.S.B. 111, 74th Leg., R.S. (1995); *see* HOUSE RESEARCH ORG., BILL ANALYSIS 1, 3, Tex. C.S.S.B. 111, 74th Leg., R.S. (1995).

Because the child-safety-zone statutes and municipal residence restrictions are not inconsistent and because the child-safety-zone statutes do not "with unmistakable clarity" preempt a home-rule municipality's authority to legislate in this area, we conclude that state law does not preempt municipal residence restrictions generally.[2] *Dallas Merchant's & Concessionaire's Ass'n*, 852 S.W.2d at 491.

## II.     Whether Residence Restrictions Adopted by Home-Rule Municipalities Contravene Various Provisions of the Texas Constitution

You also ask whether article I, section 3 or 19, "or any other provision of the Texas Constitution" limits a home-rule municipality's authority to adopt residence restrictions. Request Letter, *supra* note 1, at 2. Article I, section 3, like its federal counterpart found in the Fourteenth Amendment to the United States Constitution, guarantees "all persons similarly situated . . . equal protection under the laws of this [s]tate and of the United States." *Nonn v. State*, 117 S.W.3d 874, 881–82 (Tex. Crim. App. 2003); *see* TEX. CONST. art. I, § 3; *see also* U.S. CONST. amend. XIV, § 1. Texas cases apply federal standards "when determining whether a statute violates equal protection under either provision." *Rose v. Doctors Hosp.*, 801 S.W.2d 841, 846 (Tex. 1990). Under those standards, when a law creates a classification that "does not infringe upon fundamental rights or does not burden an inherently suspect class, equal protection requires only that the statutory classification . . . rationally relate[] to a legitimate state interest." *Id.* "In determining whether or not a state law violates the Equal Protection Clause," a court must "consider the facts and circumstances behind the law, the interests [that] the State claims to be protecting, and the interests of those who are disadvantaged by the classification." *Williams v. Rhodes*, 393 U.S. 23, 30 (1968). Given that we have no particular municipal ordinance before us here, we cannot perform an equal-protection analysis. Courts that have considered specific state statutory residence restrictions in the

---

[2]Several bills already have been filed for the Eightieth Legislative Session that prescribe state-wide residence restrictions for sex offenders. *See, e.g.*, Tex. S.B. 94, 80th Leg., R.S. (2007); Tex. S.B. 88, 80th Leg., R.S. (2007); Tex. H.B. 203, 80th Leg., R.S. (2007); Tex. H.B. 62, 80th Leg., R.S. (2007). We do not consider in this opinion whether any of these bills, if adopted, will preempt municipal residence restrictions.

context of an equal-protection analysis, however, have held that the residence restrictions do not impinge upon fundamental rights or burden an inherently suspect class and that the residence restrictions rationally relate to the state's legitimate interest in promoting children's safety. The residence restrictions that have been considered thus were found not to violate the Federal Equal Protection Clause.[3]

Article I, section 19 of the Texas Constitution, which prohibits the deprivation "of life, liberty, property, privileges, or immunities" without "due course of the law," is nearly identical to the Federal Due Process Clause, which is found in the Fourteenth Amendment to the United States Constitution. *See Univ. of Tex. Med. Sch. v. Than*, 901 S.W.2d 926, 929 (Tex. 1995). *Compare* TEX. CONST. art. I, § 19, *with* U.S. CONST. amend. XIV, § 1. In matters of procedural due process, Texas courts traditionally follow "contemporary federal due process interpretations of procedural due process issues." *Than*, 901 S.W.2d at 929. A court's review of a due-process claim requires a two-part analysis: (1) whether the liberty or property interests allegedly involved are entitled to procedural due-process protection; and (2) if so, what process is due. *Id.* The Texas Supreme Court, quoting the United States Supreme Court, has indicated that the liberty interests protected by procedural due process mirror those protected by the constitutional equal-protection guarantees:

> In defining the scope of protected liberty interests under the Fourteenth Amendment, the United States Supreme Court has stated that a liberty interest:
>
> [D]enotes not merely freedom from bodily restraint but also the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, establish a home and bring up children, to worship God according to the dictates of one's own conscience, and generally to enjoy those privileges long recognized . . . as essential to the orderly pursuit of happiness by free men.

*Id.* at 929–30 (quoting *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 572 (1972)). A property interest to which procedural due process applies is one that is either vested or springs from state law. *See Pickell v. Brooks*, 846 S.W.2d 421, 426 (Tex. App.—Austin 1992, writ denied).

---

[3]*See Weems v. Little Rock Police Dep't*, 453 F.3d 1010, 1013, 1016 (8th Cir. 2006) (considering the constitutionality of an Arkansas law prohibiting certain high-risk sex offenders from residing within 2,000 feet of the property on which a public or private elementary or secondary school or daycare facility is located); *Doe v. Miller*, 405 F.3d 700, 704, 711–14 (8th Cir.) (considering the constitutionality of an Iowa statute that prohibits a person convicted of certain sex offenses from residing within 2,000 feet of a school or registered child-care facility), *cert. denied*, 126 S. Ct. 757 (2005); *Graham v. Henry*, No. 06 CV 381 TCK FHM, 2006 WL 2645130, at *1, *8 (N.D. Okla. 2006) (considering the constitutionality of an Oklahoma statute prohibiting certain sex offenders from residing within 2,000 feet of a public or private school, educational institution, playground, park, or licensed child-care facility); *People v. Leroy*, 828 N.E.2d 769, 775, 778 (Ill. App. Ct. 2005) (considering the constitutionality of an Illinois statute prohibiting certain sex offenders from knowingly residing within 500 feet of a playground or a facility providing programs or services exclusively directed toward persons under 18 years of age).

Whether, in a particular instance, a sex offender subject to a municipal residence restriction can succeed in a case alleging that the residence restriction violates his or her constitutional right to procedural due process is a question that a court must decide after determining the relevant facts. *See* Tex. Att'y Gen. Op. No. GA-0446 (2006) at 18 ("Questions of fact are not appropriate to the opinion process."). To date no sex offender has successfully persuaded a court that a residence restriction violated the offender's procedural due process rights. *See, e.g., Doe*, 405 F.3d at 709 (concluding that the absence of an individualized hearing to determine a sex offender's dangerousness "does not offend principles of procedural due process"); *State v. Seering*, 701 N.W.2d 655, 666 (Iowa 2005) (finding that the plaintiff "has not even explained how the [Iowa] residency restriction statute" violates "a private interest in freedom of choice in residence").

Finally, you ask if any other provision of the Texas Constitution limits a home-rule municipality's authority to impose residence restrictions. *See* Request Letter, *supra* note 1, at 2. We know of no Texas case considering challenges to residence restrictions on state constitutional grounds. We note, however, that sex offenders in other states have raised numerous federal constitutional provisions, but none have successfully argued that a residence restriction was unconstitutional.[4] Given the fact-intensive nature of any constitutional analysis of a specific home-rule municipality's ordinance, we will not consider the possible claims generally here.

---

[4]*See, e.g., Weems*, 453 F.3d at 1015, 1017 (holding that Arkansas statutory residence restriction does not violate constitutional substantive due-process principles, does not violate a constitutional right to travel, and is not an unconstitutional ex post facto law); *Doe*, 405 F.3d at 708, 709–23 (holding that Iowa's statutory residence restriction is not unconstitutionally vague, does not violate substantive due process, does not violate the right against self-incrimination, and is not an ex post facto law); *Graham*, 2006 WL 2645130, at *4–*10 (concluding, in the context of a motion for a preliminary injunction, that Oklahoma's statutory residence restriction did not violate the constitutional prohibition against double jeopardy, substantive due-process principles, or the Privileges and Immunities Clause of the Fourteenth Amendment); *Coston v. Petro*, 398 F. Supp. 2d 878, 880, 887 (S.D. Ohio 2005) (noting sex offender's arguments that an Ohio statutory residence restriction that prohibits a sex offender from residing within 1,000 feet of a school premises infringes on the fundamental right of privacy in family matters and the fundamental right of intrastate travel and violates the constitutional right against impairment of contracts, the right against self-incrimination, the Ex Post Facto Clause, and the Takings Clause of the Fifth Amendment); *Seering*, 701 N.W.2d at 665, 666–69, 670 (holding that Iowa's statutory residence restriction does not violate substantive due process, the Ex Post Facto Clause, or the right against self-incrimination, and did not constitute unconstitutionally cruel and unusual punishment); *Leroy*, 828 N.E.2d at 776–77, 778–84 (holding that Illinois statutory residence restrictions do not violate substantive due-process principles, constitute an ex post facto law, violate the prohibition against self-incrimination, or constitute cruel and unusual punishment); *Denson v. Georgia*, 600 S.E.2d 645, 646–47 (Ga. Ct. App. 2004) (concluding that Georgia's statutory residence restriction, which prohibits a sex offender from residing within 1,000 feet of a day-care facility, is not an ex post facto law because the sex offender can be punished only if he "prospectively chooses to violate the law by continuing to reside" within the prohibited zone).

## S U M M A R Y

State law does not preempt a home-rule municipality's ordinance prohibiting registered sex offenders from living within a specified distance from locations where children typically congregate. Whether a particular ordinance is permitted by the Texas Constitution is a question that must be determined by a court after considering all of the relevant facts applicable to a specific ordinance; to date, however, no court has found that a statutory residence restriction violates any federal constitutional provision.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

KENT C. SULLIVAN
First Assistant Attorney General

ELLEN L. WITT
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Kymberly K. Oltrogge
Assistant Attorney General, Opinion Committee